IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| KATHERINE J. TAYLOR, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 07-G-0333-W |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The plaintiff, Katherine J. Taylor, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

>   (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ William Johnson determined the plaintiff met the first two tests, but concluded that while she has an impairment or impairments considered "severe," she did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to her prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited.

Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id.

## DISCUSSION

The ALJ found that the plaintiff suffered from the following severe impairments: chronic obstructive pulmonary disease and chronic bronchitis. [R. 14]. However, the ALJ found that the plaintiff's combination of impairments neither meets nor equals a Listing. [R. 17]. He determined that the plaintiff is unable to perform any past relevant work. [R. 19]. However, the ALJ found that the plaintiff:

> has the residual functional capacity to perform sedentary work which allows for the environmental limitations of avoiding heat and cold extremes, avoiding wetness and humidity, and avoiding dust, pollutants, irritants, and airborne matter which would exacerbate existing pulmonary problems.

[R. 17]. Accordingly, he found the plaintiff to be not disabled. [R. 20].

The plaintiff testified that because of her chronic obstructive pulmonary disease (COPD), she has difficulty breathing during any type of exertion. [R. 56, 247-248]. Standing for short periods and walking short distances exhaust her. [R. 250]. She does light housework, but cannot sweep, vacuum, mop or dust. [R. 247]. The plaintiff estimated that during a typical eight-hour day, she rests five hours because of her nebulizer treatments and side-effects from her medications. [R. 258-259]. The plaintiff testified that doctors have prescribed for her to use her nebulizer four times a day, but because she does not have health insurance and cannot afford the medicine, she uses it once or twice a day. [R. 244-245]. The record is replete with records of numerous emergency room[1] visits for asthma and chronic bronchitis. [R. 102-109; 110-116; 117-123; 124-130; 140-147; 172-175; 176-180; 181-186; 187-191; 195-202; 205-209; 210-216; and 216-221].

Because the ALJ found that the plaintiff is unable to perform any of her past relevant work, the burden shifted to the Commissioner to show "that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education and work experience. . . ." [R. 14].

---

[1] Because of her lack of health insurance, the plaintiff uses various hospital emergency rooms for her primary care.

In examining the vocational expert, the ALJ asked VE Dan Kinard to:

> assume an individual of Ms. Taylor's vocational profile with the following exertional limitations. Could occasionally lift 20 pounds, frequently lift 10 pounds; stand or walk with normal breaks for a total of at least two hours in an eight-hour-workday; sitting approximately six hours in an eight-hour-workday. The environmental limitations would be to avoid extreme heat and cold temperatures, avoid wetness and humidity. Finally, with respect to environmental limitations, there would be a limitation of working in environments which serve to aggravate a preexisting pulmonary or asthmatic condition. Therefore, one which minimizes exposure to dust, lint, irritants, fumes, any type of airborne particulate matter, which would exacerbate the underlying pulmonary condition.

[R. 263-264]. In response to these limitations, the VE identified examples of sedentary jobs[2] that a person with these restrictions could perform. [R 264]. The examination continued:

> ALJ: Secondly, Mr. Kinard, assume an individual again with Ms. Taylor's profile along with the limitations I just described, but also we need to factor in the downtime, if you will, attributable to the reclining, napping, resting, resulting from the side effects of medication as well as the pain due to headaches and the shortness of breath. Ms. Taylor indicated that during the course of an eight-hour workday the total amount of time that she would need to dedicate to those self-described limitations was approximately five hours. Also included in that would be the irritable bowel symptomatology and the necessity to take frequent breaks for the restroom. Would that five-hour timeframe be vocationally relevant.
>
> VE: It would.

---

[2] These included: bonder in the semiconductor industry (more than 68,000 nationally, with more than 1,000 in north central Alabama); surveillance system monitor (more than 1 million nationally, with more than 1,600 in north central Alabama); and inspector of small parts (more than 600,000 nationally, with more than 1,400 in north central Alabama). [R. 264-265].

> ALJ: In what way?
>
> VE: It would preclude any gainful activity.

[R. 265-266]. Later, the plaintiff's attorney questioned the VE:

> ATTY: Mr. Kinard, if you would, I would like to separate out in addition to that five-hour downtime, I would like to separate out the treatment for the nebulizer, and if you would, assume for me that Ms. Taylor did take the nebulizer treatments as prescribed, that it took approximately 15 to 20 minutes per treatment and approximately four treatments per day. Would that have any vocational impact on the jobs that you mentioned?
>
> VE: It would.
>
> ATTY: How so?
>
> VE: **Most unskilled work cannot tolerate the use of a nebulizer at the jobsite.**
>
> ATTY: Okay. Would that, would that be the case for all the jobs you've mentioned here?
>
> VE: I believe so.

[R. 266-267].(emphasis added). Because the VE testified that the plaintiff can perform no jobs if her subjective testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.

The ALJ's refusal to credit the plaintiff's subjective complaints is not supported by substantial evidence. The medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's subjective allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record

8

demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

      In making his credibility finding, the ALJ stated:

> Although the claimant alleged at the hearing significant side effects from her medications, those allegations are not supported by any objective medical evidence. There is no evidence that the claimant has reported to any physician who has treated or examined her any significant side effects from any of her medications. The claimant alleged at the hearing she was unable to function for several hours after using her nebulizer because it made her nervous, tremble, and be unable to speak intelligibly. It is unlikely that the claimant would have failed to mention such severe side effects to any physician [who] has treated or examined her.

[R. 18]. This finding is not supported by substantial evidence. All of the side effects testified to by the plaintiff, including headaches, nervousness and trembling, are documented side-effects of Albuterol, which she takes daily through a nebulizer and inhaler. The plaintiff has no treating physician because she lacks health insurance. She receives her primary care at hospital emergency rooms, and has no doctor-patient relationship wherein she would report medication side effects.

      "When there have been nonexertional factors (such as depression and medication side effects) alleged, the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert." MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986)(citing Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981). Here, the VE testified that the plaintiff's use of a nebulizer at the

jobs he identified would not be tolerated. [R. 267]. Had the ALJ properly considered the prescribed use of the plaintiff's nebulizer, along with the side effects of the medication, he would have found that there are no jobs the plaintiff can perform. Even without considering side effects, the same reasoning applies with the same result.

Substantial evidence does not support the ALJ's decision to discredit the plaintiff's testimony regarding her subjective complaints. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 20 June 2008.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.